**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                          *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERALDINE MARINI,** | : | Civil Action No. |
| 1 Caroline Court | : | |
| Pilesgrove, NJ 08098 | : | |
|       Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **SAINT JOSEPH'S UNIVERSITY,** | : | |
| 5600 City Avenue | : | |
| Merion Station, PA 19131 | : | |
|       Defendant. | : | |

### CIVIL ACTION

Plaintiff, Geraldine Marini (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Saint Joseph's University (hereinafter "Defendant"), for violations of the Age Discrimination in Employment Act ("ADEA"), Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Saint Joseph's University is a private Jesuit

university with a location and corporate headquarters at 5600 City Avenue, Merion Station, PA 19131.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADEA, the ADA and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on October 10, 2024, alleging age and disability discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2025-00623 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated November 4, 2024.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff was born in 1962.

21. In or around 2017, Defendant hired Plaintiff in the position of Full Time Faculty Member in the Occupational Therapy Program.

22. Plaintiff was well qualified for her position and performed well.

23. In or around 2019, Plaintiff had an amputation of the lower part of her left leg which limited the major life activities of, *inter alia*, standing and walking.

24. This is a serious health condition that is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

25. When Plaintiff tried to return to work, Wendy Walsh, Chair of Occupational Therapy Department, and Marcia Conrad, Human Resources, gave Plaintiff a hard time.

26. By way of example and not limitation, Conrad stated that Plaintiff could not return to work unless she could return at full duty capacity with no medical restrictions, or words to that effect.

27. In addition, Walsh asked Plaintiff on at least two (2) occasions if Plaintiff was still sure she could do her job duties because Plaintiff was "getting older" or words to that effect.

28. Further, Defendant's Human Resources Department tried to force Plaintiff to hire someone to help Plaintiff get around Defendant's campus.

29. Plaintiff told Walsh and Human Resources on multiple occasions that she did not need extra assistance because she was cleared to return to work.

30. Plaintiff also used a prosthetic leg to walk on her own.

31. Defendant did not allow Plaintiff to return to work until she received her prosthetic leg and was able to get around campus on her own.

32. In or around the fall of 2023, Walsh informed Plaintiff and the rest of the Occupational Therapy Department that there was going to be department wide layoffs due to a lack of enrollment in the department.

33. Walsh stated that she would suggest names to Dr. Cathy Poon, Interim Dean of the School of Health Professions, for the layoffs.

34. Then Dr. Poon would make the decision for who to officially terminate based on Walsh's suggestions.

35. On or about May 10, 2024, Dr. Poon emailed Plaintiff requesting that she call her.

36. Plaintiff called Dr. Poon as directed.

37. On the call, Dr. Poon informed Plaintiff that the contract for employment in the Department of Occupational Therapy would not be renewed due to layoffs across Defendant.

38. Plaintiff had one of the longest tenures out of anyone in her department.

39. Plaintiff was one of the three (3) oldest Faculty Members in her department, one of whom is tenured

40. In a department of approximately thirteen (13), Plaintiff's counterparts are in their 40's or early 50's.

41. On or about May 16, 2024, Dr. Poon pulled Plaintiff into a meeting.

42. Dr. Poon stated that Plaintiff was selected to be laid off.

43. Dr. Poon told Plaintiff that her contract would not be renewed for the next year once her current school year contract ended in June 2024.

44. Upon information and belief, only one other person from the Occupational Therapy department was selected to be laid off.

45. The Faculty Member is approximately fifty (50) years old, making her another one of the oldest Faculty Members in the department.

46. Plaintiff asked Dr. Poon why she was selected to be laid off.

47. Dr. Poon said Defendant used "criteria" to make the layoff decisions or words to that effect.

48. However, Dr. Poon stated that she could not discuss this "criteria" with Plaintiff at the time.

49. In or around the end of May 2024, Plaintiff followed up with Dr. Poon about the criteria used to make the layoff decisions.

50. Dr. Poon subsequently stated that Defendant considered seniority, expertise, teaching and impact to make its decisions or words to that effect.

51. However, Plaintiff had more seniority than the majority of her counterparts in the department, including those who were not laid off.

52. Further, Plaintiff taught over 20 classes within the curriculum.

53. Plaintiff also received two (2) positive peer performance reviews just prior to the termination decision.

54. At the end of this conversation, Dr. Poon finally told Plaintiff that she just went with the recommendations of Walsh or words to that effect.

55. Importantly, throughout Plaintiff's employment, Walsh showed favoritism to Plaintiff's younger counterparts.

56. Walsh refused to listen to Plaintiff's concerns about student issues.

57. Walsh acted hostile toward Plaintiff and her other older counterparts.

58. Further, in 2023, when the Occupational Therapy Program changed hands from USciences to Defendant, Defendant offered buyout options for three (3) of the more senior faculty.

59. Then, when Plaintiff was laid off, Walsh tried to push the only other employee over sixty (60) years old (upon information and belief this employee was over seventy (70) years old) in the department to retire.

60. This employee could not be chosen for the layoff because she is tenured.

61. Plaintiff was 61 years old at the time of her termination.

62. Defendant retained similarly situated employees with lesser or similar qualifications as Plaintiff.

63. Defendant discriminated against Plaintiff due to her age and/or disability and retaliated against her for engaging in protected activity by requesting her disability leave and/or accommodation in violation of the ADEA, the ADA and the PHRA.

64. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily-protected rights.

## COUNT I – AGE DISCRIMINATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT

65. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

66. Plaintiff was born in 1962.

67. Plaintiff was qualified to perform the job.

68. Defendant terminated Plaintiff.

69. Defendant treated younger employees more favorably than Plaintiff.

70. Defendant retained younger employees with the same or lesser qualifications as Plaintiff.

71. Defendant has no legitimate non-discriminatory reason for its actions.

72. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

73. Defendant's violations of the ADEA were willful or performed with reckless disregard to Plaintiff's statutorily-protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – AGE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

74. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

75. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her age.

76. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

77. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

78. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

79. Plaintiff was qualified to perform the job.

80. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

81. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

82. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

83. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

84. The purported reason for Defendant's decision is pretextual.

85. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

86. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

87. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

88. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT IV – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

89. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

90. Plaintiff is a "qualified individual with a disability" as that term is defined under the

PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

91. Plaintiff was qualified to perform the job.

92. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

93. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

94. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

95. Plaintiff's disability motivated Defendant's decision to constructively discharge Plaintiff.

96. The purported reason for Defendant's decision is pretextual.

97. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

98. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

99. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

100. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

101. Plaintiff engaged in activity protected by the ADA.

102. Plaintiff requested reasonable accommodations due to her disability to Defendant.

103. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

104. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT VI – RETALIATION
### PENNSYLVANIA HUMAN RELATIONS ACT

105. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

106. Plaintiff engaged in activity protected by the PHRA.

107. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

108. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Geraldine Marini, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADEA, the ADA and the PHRA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                                            **RESPECTFULLY SUBMITTED,**

                                            **KOLLER LAW, LLC**

Date: February 3, 2025            **By:**   **_/s/David M. Koller_**
                                                         David M. Koller, Esquire
                                                         Jordan D. Santo, Esquire
                                                         2043 Locust Street, Suite 1B
                                                         Philadelphia, PA 19103
                                                         215-545-8917
                                                          davidk@kollerlawfirm.com
                                                          jordans@kollerlawfirm.com

                                                          *Counsel for Plaintiff*